1  KILPATRICK TOWNSEND & STOCKTON LLP
   TREVOR C. MAXIM (317859)
2  TMaxim@kilpatricktownsend.com
   9720 Wilshire Blvd PH
3  Beverly Hills, CA  90212-2018
   Telephone:  310-248-3830
4  Facsimile:   310-860-0363

5  R. CHARLES HENN JR. (*Pro Hac Vice* App. Pending)
   CHenn@kilpatricktownsend.com
6  CHARLES H. HOOKER III (*Pro Hac Vice* App. Pending)
   CHooker@kilpatricktownsend.com
7  1100 Peachtree Street, Suite 2800
   Atlanta, GA 30309-4530
8  Telephone:  404-815-6500
   Facsimile:   404-815-6555
9
   Attorneys for Plaintiffs
10 ADIDAS AMERICA, INC., ADIDAS AG, ADIDAS INTERNATIONAL
   MARKETING B.V., REEBOK INTERNATIONAL LIMITED, AND REEBOK
11 INTERNATIONAL LTD.

12                    **UNITED STATES DISTRICT COURT**

13              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14
   ADIDAS AMERICA, INC., ADIDAS          **Civil Action No. 2:19-cv-5167**
15 AG, ADIDAS INTERNATIONAL
   MARKETING B.V., REEBOK               **COMPLAINT FOR:**
16 INTERNATIONAL LIMITED, AND           **1. COUNTERFEITING;**
   REEBOK INTERNATIONAL LTD.            **2. FEDERAL TRADEMARK**
17                                       **   INFRINGEMENT (15 U.S.C. §**
                Plaintiffs,              **   1114);**
18                                       **3. FEDERAL UNFAIR**
           v.                            **   COMPETITION (15 U.S.C. §**
19                                       **   1125(A));**
   CAVALIER CLOSEOUTS INC. AND           **4. UNFAIR AND DECEPTIVE**
20 EYAN DAHAN,                           **   TRADE PRACTICES;**
                                         **5. COMMON LAW TRADEMARK**
21              Defendants.              **   INFRINGEMENT AND UNFAIR**
                                         **   COMPETITION;**
22                                       **6. FEDERAL TRADEMARK**
                                         **   DILUTION (15 U.S.C. § 1125(C));**
23                                       **   AND**
                                         **7. STATE TRADEMARK**
24                                       **   DILUTION.**

25                                       **DEMAND FOR JURY TRIAL**

26

27      Plaintiffs adidas America, Inc., adidas International Marketing B.V., and

28 adidas AG (collectively, "adidas"), together with Reebok International Limited and

Reebok International Ltd. (collectively, "Reebok," and together with adidas, "Plaintiffs"), state the following for their Complaint against Defendants Cavalier Closeouts Inc. ("Cavalier") and Eyan Dahan, individually and doing business as Apparel Liquidators (collectively, "Defendants").

## I.    INTRODUCTION

1.    adidas and Reebok are two of the world's leading manufacturers of athletic apparel, footwear, and sporting equipment.

2.    For well over half a century, adidas has manufactured, sold, and promoted apparel and footwear bearing its distinctive Three-Stripe trademark (the "Three-Stripe Mark"), which federal courts repeatedly have found is a famous mark in the United States. adidas also has manufactured, sold, and promoted footwear and apparel bearing its famous ADIDAS word mark (the "ADIDAS Mark"), triangular logo (the "Badge of Sport"), and Trefoil Mark (the "Trefoil Mark"). The Badge of Sport Mark and Trefoil Mark incorporate the Three-Stripe Mark and are depicted below:

**Badge of Sport Mark**                    **Trefoil Mark**



(Collectively, the Three-Stripe Mark, ADIDAS Mark, Badge of Sport, and Trefoil Mark are referred to as the "adidas Marks.)

3.    adidas has made longstanding use of its famous adidas Marks on apparel throughout the United States, examples of which are shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28








 

4.      In addition to its strong common law rights, adidas owns numerous incontestable federal trademark registrations for the adidas Marks for apparel and footwear, and adidas has invested hundreds of millions of dollars building a powerful brand in connection with these marks.

5.      As a result of adidas's longstanding and extensive use, advertising, and promotion of the adidas Marks, the marks have become extremely well known among consumers for apparel, athletic goods, and related retail services throughout the United States and around the world, and consumers exclusively associate the adidas Marks with adidas.

6.      adidas also owns the Reebok brand. Since 1980, Reebok has manufactured, sold, and promoted footwear and apparel in the United States under its well-known and famous REEBOK trademark (the "REEBOK Mark").

7.      Beginning as early as 2011, Reebok has been manufacturing, selling, and promoting apparel and athletic products under its well-known delta design (the "Delta Mark"), depicted below:



Like the REEBOK Mark, the widely popular Delta Mark symbolizes the high quality and strong reputation of Reebok's products and the goodwill Reebok has built in its brand. (Collectively, the REEBOK Mark and Delta Mark are referred to as the "Reebok Marks.")

8. Reebok has made longstanding use of its well-known Reebok Marks on apparel in the United States, examples of which are shown below:

 

9. In addition to its strong common law rights, Reebok owns numerous incontestable federal registrations for the Reebok Marks and has spent millions of dollars promoting and building its brand under these marks.

10. Reebok has made extensive use of the Reebok Marks on apparel and athletic products throughout the United States. As a result of Reebok's longstanding and extensive use, advertising, and promotion of the Reebok Marks, the marks have become extremely well known among consumers for apparel, athletic goods, and related retail services throughout the United States and around the world, and consumers exclusively associate the Reebok Marks with Reebok.

11. Despite adidas's and Reebok's respective rights in the adidas Marks and Reebok Marks (collectively, "Plaintiffs' Marks"), Defendants are importing, sourcing, distributing, marketing, promoting, offering for sale, and selling apparel bearing identical or confusingly similar imitations of Plaintiffs' Marks, as depicted

1   in the examples below (the "Counterfeit Goods"):

  

 

 

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28











Defendants' apparel is not manufactured by Plaintiffs, nor are Defendants connected or affiliated with, or authorized by, Plaintiffs in any way. Defendants' merchandise

1   is counterfeit, likely to cause confusion, deceive the public regarding its source, and
2   dilute and tarnish the distinctive quality of Plaintiffs' Marks.

3        12.    This is an action at law and in equity for counterfeiting, trademark
4   infringement and dilution, unfair competition, and deceptive trade practices arising
5   under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et. seq. (2009); the fair
6   business practices and unfair and deceptive trade practices acts of several states; and
7   the common law. Among other relief, adidas and Reebok ask this Court to: (a)
8   permanently enjoin Defendants from distributing, marketing or selling apparel
9   bearing counterfeit or confusingly similar imitations of Plaintiffs' Marks; (b) award
10  Plaintiffs monetary damages and to treble any monetary damages award; (c) require
11  Defendants to disgorge all profits from sales of the infringing apparel; and (d) award
12  Plaintiffs punitive damages, attorneys' fees, and costs, as well as such other relief
13  the Court deems just.

## II.    JURISDICTION AND VENUE

15       13.    This Court has subject matter jurisdiction under section 39 of the
16  Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331, 1332, and 1338.
17  Subject matter jurisdiction over Plaintiffs' related state and common law claims is
18  proper pursuant to 28 U.S.C. §§ 1338 and 1367.

19       14.    Alternatively, this Court has jurisdiction over Plaintiffs' related state
20  and common law claims based on diversity of citizenship under 28 U.S.C. § 1332.

21       15.    This Court has personal jurisdiction over Defendants because, on
22  information and belief: (a) Defendants reside in California and/or have their
23  principal place of business in California; (b) Defendants have marketed, distributed,
24  offered for sale, or sold the Counterfeit Goods to persons within the State of
25  California; (c) Defendants regularly transact and conduct business within the State
26  of California; or (d) Defendants have otherwise made or established contacts within
27  the State of California sufficient to permit the exercise of personal jurisdiction.

28       16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

1    because a substantial part of the acts or omissions giving rise to Plaintiffs' claims

2    occurred in this District.

3                              III.   PARTIES

4         17.    Plaintiff adidas AG is a joint stock company organized and existing

5    under the laws of the Federal Republic of Germany, having its office and principal

6    place of business at Postach 11230, D-91072 Herzogenaurach, Federal Republic of

7    Germany.

8         18.    Plaintiff adidas International Marketing B.V. is organized under the

9    laws of the Netherlands, having a principal place of business at Atlas Arena Offices,

10   Africa Building, Hoogoorddreef 9-A, 1101 BA Amsterdam Zuidoost, Netherlands.

11        19.    Plaintiff adidas America, Inc. is a corporation organized and existing

12   under the laws of the State of Oregon, having its principal place of business at 5055

13   N. Greeley Avenue, Portland, Oregon 97217. adidas America, Inc. directs all U.S.-

14   based operations on behalf of adidas AG and adidas International Marketing B.V.,

15   including sales, brand marketing, product marketing, product design, public

16   relations, distribution, enforcement, and licensing of and for merchandise bearing

17   the adidas Marks.  adidas AG, adidas International Marketing B.V., and adidas

18   America, Inc., as well as any predecessors or related entities, are collectively

19   referred to as "adidas."

20        20.    Plaintiff Reebok International Limited is a corporation organized and

21   existing under the laws of England, having its principal place of business at 11/12

22   Pall Mall, London SW1Y 5LU, England. Reebok International Limited is wholly

23   owned by adidas AG and its affiliates.

24        21.    Reebok International Ltd. is a corporation organized and existing under

25   the laws of the State of Delaware, having its principal place of business at 1895 JW

26   Foster Boulevard, Canton, Massachusetts 02021. Reebok International Ltd. is

27   wholly owned by adidas AG and its affiliates and, within the United States, Reebok

28   International Ltd. is a licensed distributor of REEBOK-branded merchandise,

1   including goods bearing the Reebok Marks. Reebok International Limited and

2   Reebok International Ltd., and any predecessors or related entities, are collectively

3   referred to as "Reebok."

4       22.    On information and belief, Defendant Cavalier is a California

5   corporation having a principal place of business at 431 East 16th Street, Los

6   Angeles California 90015.

7       23.    On information and belief, Defendant Cavalier also operates a place of

8   business at 429 East Alondra Boulevard, Gardena, California 90248.

9       24.    On information and belief, Defendant Eyan Dahan is an individual

10  residing 6259 Warner Drive, Los Angeles, California 90048.

11      **IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF**

12      **A.    adidas's Three-Stripe Mark**

13      25.    adidas is currently, and for years has been, one of the world's leading

14  manufacturers of athletic footwear, sportswear, and sporting equipment.  At least as

15  early as 1952, adidas began using its Three-Stripe Mark on footwear sold in the

16  United States and worldwide. The Three-Stripe Mark quickly came to signify the

17  quality and reputation of adidas footwear to the sporting world early in the

18  company's history. Pages from adidas catalogs featuring examples of footwear

19  bearing the Three-Stripe Mark are attached as **Exhibit 1**.

20      26.    At least as early as 1967, adidas began using the Three-Stripe Mark on

21  apparel sold in the United States and worldwide.  Pages from adidas catalogs

22  featuring apparel bearing the Three-Stripe Mark are attached as **Exhibit 2**.

23      27.    adidas is the owner of a federal trademark registration, Reg. No.

24  2,058,619, issued by the United States Patent and Trademark Office (the "USPTO")

25  on May 6, 1997, for the Three-Stripe Mark, as depicted below, for "sports and

26  leisure wear, namely shirts."

27

28

1
2
3
4



5
6
7

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15

8

U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the

9

Certificate of Registration for this mark is attached as **Exhibit 3**.

10

        28.     adidas is the owner of a federal trademark registration, Reg. No.

11

3,029,127, issued by the USPTO on December 13, 2005, for the Three-Stripe Mark,

as depicted below, for "clothing, namely, T-shirts, sweatshirts, jackets and coats."

12
13
14
15



16
17

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15

18

U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the

19

Certificate of Registration for this mark is attached as **Exhibit 4**.

20

        29.     adidas is the owner of a federal trademark registration, Reg. No.

21

3,087,329, issued by the USPTO on May 2, 2006, for the Three-Stripe Mark, as

22

depicted below, for "clothing, namely, shirts, T-shirts, sweatshirts, vests, jackets and

coats."

23
24
25
26



27
28

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 5**.

30.    adidas is the owner of a federal trademark registration, Reg. No. 2,278,591, issued by the PTO on September 21, 1999, for the Three-Stripe Mark, as depicted below, for "sports and leisure wear, namely shorts."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 6**.

31.    adidas also owns numerous additional trademark registrations for the Three-Stripe Mark covering apparel (Reg. Nos. 870,136, 2,016,963, 2,284,308, 3,063,742, 3,063,745, 3,183,656, and 3,236,505).  A copy of the Certificate of Registration for each of these marks is attached as **Exhibit 7**.

32.    Additionally, adidas owns federal registrations for verbal trademarks using the term "3 stripes" including THE BRAND WITH THE 3 STRIPES, Reg. No. 1,674,229, for "sport and leisure wear."  Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 8**.

33.    adidas's Three-Stripe Mark is well-known and famous and has been for many years.

34.    adidas has used the Three-Stripe Mark in connection with its frequent sponsorship of musical artists, including Beyoncé Knowles, Kanye West, Katy Perry, Pharrell Williams, Selena Gomez, and Snoop Dogg.

35.     adidas has also used the Three-Stripe Mark in connection with its frequent sponsorship of athletic tournaments and organizations, as well as professional athletes and collegiate sports teams. For example, adidas has had longstanding relationships with the University of Nebraska, the University of Louisville, the Georgia Institute of Technology, the University of Michigan, and the University of Miami. Among many others, adidas sponsors: (a) NBA stars James Harden and John Wall; (b) NFL stars Von Miller and Patrick Mahomes; and (c) professional golfer Sergio Garcia. For decades, adidas has also sponsored the world-famous Boston Marathon, along with many other events, teams, and individuals.

36.     The Three-Stripe Mark is nonfunctional, and the public recognizes and understands that the Three-Stripe Mark distinguishes and identifies adidas's merchandise.

37.     Unsolicited media coverage has referred to adidas's "signature three stripes" (Butler-Young, Sheena, "The Inside Scoop on How Adidas Became One of the Industry's Most Sought-After Brands," Footwear News, March 14, 2017), "iconic three stripes" (Reimel, Erin, "Alexander Wang Announced a Major Collab With Adidas at Fashion Week," Glamour, September 11, 2016), "famous Three Stripes" (Schwartz, Rob, "Three Brands That Won At The World Cup," Forbes, July 13, 2014), "trademark three-stripe sneakers" (Brettman, Allan, "Adidas lifts 2012 forecast as sales in China soar in Q1," The Oregonian, May 1, 2012), "ubiquitous three stripes" (Brettman, Allan, "Going 'All In' Against Nike," The Oregonian, March 15, 2011), "trademark three-stripe logo" (Pennington, Bill, "Belts That Do More Than Hold Up Pants," New York Times, July 26, 2009), "iconic three stripes" ("Game Time," Footwear News, June 16, 2008), "signature three stripes" (Moore, Booth, "Ringing endorsements; Form follows function with much Olympic wear, but fashion and funding are also at play," L.A. Times, August 13, 2004), the "famous brand with the three stripes" (Whiting, Sam, "MustHave," San Francisco Chronicle, July 7, 2002), and the "legendary Adidas three stripes" ("Coty Inc.,"

Brand Strategy, September 27, 1999). Copies of the foregoing and other unsolicited media articles discussing the adidas brand and the Three-Stripe Mark are attached collectively as **Exhibit 9**.

38.     For decades, adidas extensively and continuously has used and promoted the Three-Stripe Mark in connection with footwear and apparel.  In recent years, annual sales of products bearing the Three-Stripe Mark have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.  The Three-Stripe Mark has achieved international fame and tremendous public recognition.

39.     Since introducing its Three-Stripe Mark, adidas has spent millions of dollars promoting the mark and products bearing the mark in the United States. For example, in March 2011, adidas launched an advertising campaign in the United States "featuring Chicago Bulls guard Derrick Rose, rapper B.o.B and pop singer Katy Perry, among others," that "highlights [adidas's] imprint on the worlds of sports, music and fashion," and "show[s] the breadth and depth of the Adidas brand." A March 15, 2011 article from *The Oregonian* describing the advertising campaign is attached as **Exhibit 10.** Then, adidas launched its "Sport 15" advertising campaign, which represents adidas's biggest ad spend in the United States to date. The campaign featured soccer superstar Lionel Messi, Derrick Rose of the Chicago Bulls, and DeMarco Murray of the Dallas Cowboys. A February 13, 2015, article from AdWeek describing adidas's Sport 15 advertising campaign is attached as **Exhibit 11**. adidas's 2016 campaign featured artists such as Luka Sabbat, Kyu Steed, Aleali May, Ikwa Zhao, and Reese Cooper, while touting the fame of adidas's "signature three stripes." *See* **Exhibit 12** (Allen, Rachael, "Adidas' New Ad Campaign Is All About The Future," *Footwear News*, January 25, 2016). More recently, adidas launched its "Calling All Creators" campaign to highlight its position at the intersection of sport and culture. The campaign featured superstars from sports and beyond, including FC Barcelona striker Lionel Messi, Connecticut

Sun forward Chiney Ogwumike, Portland Trail Blazers point guard Damian Lillard, Portland Thorns midfielder Lindsey Horan, Green Bay Packers quarterback Aaron Rodgers and Houston Astros shortstop Carlos Correa, rapper Pusha T, musician/producer Pharrell Williams, fashion designer Alexander Wang, and supermodel Karlie Kloss. As a result of adidas's widespread, continuous, and exclusive use of the Three-Stripe Mark in connection with its products for over sixty-five years, the mark enjoys wide public acceptance and association with adidas, and has come to be recognized widely and favorably by the public in the United States as an indicator of the origin of adidas's goods.

40.     As a result of adidas's extensive use and promotion of the Three-Stripe Mark, adidas has built up and now owns extremely valuable goodwill that is symbolized by the Mark.  The purchasing public has come to associate the Three-Stripe Mark with adidas.

**B.     adidas's Badge of Sport**

41.     More than twenty years ago, adidas began using its well-known Badge of Sport logo, which incorporates the Three-Stripe Mark. As a result of adidas's longstanding use and exclusive marketing, advertising, and promotional efforts over the years, the Badge of Sport has become extremely well-known and famous throughout the United States, with consumers associating it exclusively with adidas.

42.     adidas is the owner of federal trademark registration, Reg. No. 1,931,827, issued by the USPTO on October 31, 1995, for the Badge of Sport, as depicted below, for "sport and leisure wear, namely, shorts, pants, shirts, T-shirts, jerseys, tights, socks, gloves, jackets, swimwear, sweaters, caps and hats, pullovers, warm-up suits, rain suits, ski suits, jump suits, boots, slippers, sandals, specific purpose athletic shoes, and general purpose sport shoes" in Class 25.



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 13**.

43.    adidas is the owner of federal trademark registration, Reg. No. 2,179,796, issued by the USPTO on August 11, 1998, for the Badge of Sport, as depicted below, for "sport and leisure wear, namely, shorts, pants, shirts, T-shirts, jerseys, tights, socks, gloves, jackets, swimwear, sweaters, caps and hats, pullovers, warm-up suits, rain suits, ski suits, jump suits, boots, slippers, sandals, specific purpose athletic shoes, and general purpose sport shoes" in Class 25.



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 14**.

44.    adidas also owns numerous additional trademark registrations for the Badge of Sport covering apparel and related sports equipment (Reg. Nos. 2,411,802, 2,532,007, 2,627,645, 2,651,325, and 3,708,658). A copy of the Certificate of Registration for each of these marks is attached as **Exhibit 15**.

**C.    adidas's Famous Trefoil Mark**

45.    Over forty years ago, adidas began using the Trefoil Mark, another well-known mark incorporating the Three-Stripe Mark, on apparel, headwear, footwear, and sportswear sold in the United States and worldwide.

- 16 -

46.     adidas is the owner of a federal trademark registration, Reg. No. 1,310,140, for the Trefoil Mark, as depicted below, for "Sportswear, namely, suits, shorts, pants, tights, shirts, jerseys, socks, gloves, jackets, coats, swimwear, sweaters, caps, pullovers, warm-up suits, rain suits, ski suits, jump suits, boots, shoes, slippers" in Class 25.



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 16**.

47.     adidas also owns additional trademark registrations for the Trefoil Mark covering apparel (Reg. Nos. 973,161, 1,253,013, 1,310,140 and 3,104,117). A copy of the Certificate of Registration for each of these marks is attached as **Exhibit 17**.

48.     The Trefoil Mark is nonfunctional, and the public recognizes and understands that the Trefoil Mark distinguishes and identifies adidas's merchandise. Indeed, unsolicited media coverage has referred to the "iconic trefoil logo" (Dwyer, Ross, adidas Originals and United Arrows & Sons Reveal A/W '18 Collection," *Sneaker News*, August 14, 2018), the "legendary trefoil" (Foley, Gregk, "Here's How adidas's Three Stripes Became World Famous," *HighSnobiety*, July 12, 2017), "the classic Adidas Trefoil" ("Saudi Arabia: Adidas opens first Originals Store," *Just-style.com*, June 23, 2009), "the famous Trefoil logo" (Jaume, Leon, "The Thinkboxes Shortlist for February 2009," *Haymarket Publishing*, March 13, 2009), and the "iconic three-stripes trefoil mark" ("Stylin' Simplicity," *Women's Wear Daily*, March 9, 2005).

49.     adidas has spent tens of millions of dollars advertising and promoting the Trefoil Mark in the United States, and the mark is famous among the public in the United States.

### D.     The ADIDAS House Mark

50.     For over sixty years, adidas has frequently used the ADIDAS house mark in connection with a wide variety of athletic goods and services.

51.     adidas is the owner of numerous federal trademark registrations covering the ADIDAS Mark for apparel and related goods and services (Reg. Nos. 883,592, 891,222, 1,300,627, 3,686,084, 3,255,820, and 3,997,183). A copy of the Certificate of Registration for each of these marks is attached as **Exhibit 18**.

52.     Like the Three-Stripe Mark, the Badge of Sport Mark, and the Trefoil Mark, the ADIDAS Mark is famous.  adidas has spent hundreds of millions of dollars promoting the mark and products bearing the mark, and it is a household name in the United States.

### E.     The Famous REEBOK Mark

53.     Reebok currently is, and for years has been, one of the world's leading manufacturers of footwear, sportswear, and sporting equipment.

54.     In the early 1980s, Reebok rose to prominence through its focus on the fitness and aerobics trends that were popular at the time.  Reebok's success in the fitness field propelled it to the forefront of the broader sports apparel industry. Today, Reebok continues to focus on modern fitness trends to become the number one fitness brand in the world.

55.     Reebok first adopted and began using its REEBOK Mark on footwear at least as early as 1965.  Reebok expanded its use of the REEBOK Mark to include use on apparel at least as early as 1985.  The REEBOK Mark has come to signify the quality and reputation of Reebok footwear, apparel, and sporting equipment.

56.     Reebok frequently uses its famous REEBOK Mark in connection with a wide variety of athletic goods and services. Reebok is the owner of several federal

trademark registrations covering the REEBOK mark for apparel, athletic goods, and related services (Reg. Nos. 1,390,793, 1,534,383, 1,728,475, 1,736,143, 1,871,428, 2,173,594, 2,211,784, 2,215,348, 2,217,838, 2,870,586, 4,347,454, and 5,530,372). A copy of the Certificate of Registration for each of these marks is attached as **Exhibit 19**.

57.    The REEBOK Mark has been well known and famous for many years. Reebok frequently promotes its REEBOK Mark through partnerships with internationally popular superstars, such as film star Gal Gadot and recording artists Cardi B and Future.

58.    Since introducing its REEBOK Mark, Reebok has spent tens of millions of dollars promoting the mark and products bearing the mark.  As a result of Reebok's continuous and exclusive use of the REEBOK Mark in connection with its products, the mark enjoys broad public association with Reebok and has come to be recognized widely and favorably by the public as an indicator of the origin of Reebok's goods.  Annually, Reebok has sold hundreds of millions of dollars of products bearing the REEBOK Mark.  The REEBOK Mark has achieved international fame, widespread public recognition, and tremendous goodwill and commercial value.  The purchasing public has come to associate the REEBOK Mark with Reebok.

59.    Reebok has also used the REEBOK Mark in connection with its frequent sponsorship of sports tournaments and organizations and professional athletes.  For example, Reebok sponsors numerous current and former professional athletes, including NBA star Allen Iverson and 2015 UFC featherweight champion Connor McGregor.  Additionally, Reebok has been, since 2011, the title sponsor of the annual Reebok CrossFit Games, which annually crowns the men and women as "The Fittest on Earth," and Reebok is also the exclusive apparel and footwear provider for CrossFit, one of the fastest growing sports in America.  Reebok is also the exclusive apparel and footwear sponsor of the Ultimate Fighting Championship

1    ("UFC"), which is the largest mixed martial arts promotion company in the world.

2    And Reebok also sponsors the Reebok Spartan Race, the largest obstacle race series

3    in the world and Les Mills, the world's largest provider of choreographed group

4    fitness classes at health clubs.

5           **F.    The Reebok Delta Mark**

6           60.    Since at least as early as 2011, Reebok has been using its well-known

7    Delta Mark on apparel. Reebok is the owner of U.S. trademark registration number

8    4,092,269 for the Delta Mark, depicted below, for "Footwear; apparel, namely,

9    shirts, tops, jackets, pants, shorts, athletic uniforms, socks, tights, gloves and, bras;

10   headwear, namely caps, hats and head bands" in Class 25.

11

12

13   

14

15   Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15

16   U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the

17   Certificate of Registration for this mark is attached as **Exhibit 20**.

18          61.    At least as early as 2011, Reebok began using the Delta logo on apparel

19   and footwear in the United States and worldwide.  Recent examples of use from

20   www.reebok.com featuring apparel and footwear bearing the Delta logo are attached

21   as **Exhibit 21**.

22          62.    Reebok has spent millions of dollars promoting the Reebok Marks and

23   products bearing those marks.  The REEBOK brand is a household name in the

24   United States, and the Delta Mark is an icon of the REEBOK Brand.  As such, the

25   Reebok Marks are famous.

26          **G.    Defendants' Unlawful Activities**

27          63.    In blatant disregard of adidas's and Reebok's rights, Defendants have

28   been sourcing, importing, distributing, marketing, promoting, offering for sale, and

1  selling in the United States apparel bearing counterfeit or confusingly similar

2  imitations of the adidas Marks and Reebok Marks (collectively, the "Counterfeit

3  Goods") in interstate commerce through brick-and-mortar warehouse stores,

4  including the examples depicted below:

  

  

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

  

  

  



64.    On information and belief, on or around December 27, 2017, law enforcement personnel and specifically the United States Customs and Border Protection, seized 27,368 pieces of suspected counterfeit merchandise imported by Defendants. On information and belief law enforcement was already working on a criminal case against Defendants at that time.

65.    On information and belief, on or around October 10, 2018, law enforcement personnel executed two search warrants in connection with buildings owned, maintained, or operated by Defendants. One search warrant was executed at 429 East Alondra Boulevard, Gardena, California 90248 (the "Alondra Warehouse"); the other at 431 East 16th Street, Los Angeles, California 90015 (the "16th Street Warehouse").

66.    On information and belief, with respect to the Alondra Warehouse, investigators from the Tax Recovery and Criminal Enforcement Taskforce, Special Agents from Homeland Security Investigations, Detectives from Los Angeles Police Department, and Officers with the United States Customs and Border Protection began by conducting a "controlled delivery" to the Alondra Warehouse. As the delivery commenced, law enforcement served and executed the search warrant, at which time law enforcement identified and recovered numerous counterfeit adidas and Reebok apparel products, along with what were, on information and belief, numerous apparel products bearing counterfeit imitations of trademarks owned by

1    other apparel brands.

2        67.    A representative from Plaintiffs was present during the execution of the

3    warrant at the Alondra Warehouse and identified the recovered adidas and Reebok

4    items as counterfeit, examples of which are depicted below:

5

6    

7

8

9

10

11

12

13

14       

15

16

17

18

19

20

21

22   

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28








1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







68. The total value of the Counterfeit Goods seized from the Alondra Warehouse was approximately $481,305.

69. The agents conducting the search of the Alondra Warehouse also seized counterfeit adidas and Reebok merchandise from a shipping container and two tractor trailers located on that property. The total value of the Counterfeit Goods seized from the shipping container and the tractor trailers was approximately $389,480.

70. On information and belief, around the same time, law enforcement also executed a search warrant at Defendants' 16th Street Warehouse where they identified and recovered more Counterfeit Goods.

71. Examples of the Counterfeit Goods seized at the 16th Street Warehouse are depicted below. These items have been identified as counterfeit by Plaintiffs.

 

 

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28












72.     The total value of Counterfeit Goods seized from the 16th Street Warehouse was approximately $514,690.

73.     On information and belief, Defendants have been engaged in the illegitimate business of importing, sourcing, distributing, marketing, promoting, offering for sale, and selling goods bearing counterfeits, or confusingly similar imitations, of Plaintiffs' Marks in California and in the greater United States.

74.     On information and belief, Defendants were familiar with Plaintiffs' rights in Plaintiffs' Marks when Defendants began importing, sourcing, distributing, marketing, promoting, offering for sale, and selling the Counterfeit Goods. On

1   further information and belief, Defendants intentionally adopted and used

2   confusingly similar and counterfeit imitations of Plaintiffs' Marks knowing that they

3   would mislead and deceive consumers into believing that the apparel was produced,

4   authorized, or licensed by Plaintiffs, or that the apparel originated from Plaintiffs.

5      75.   The Counterfeit Goods imported, sourced, distributed, marketed,

6   promoted, offered for sale, and sold by Defendants is not manufactured by

7   Plaintiffs. Nor are Defendants associated or connected with Plaintiffs, or licensed,

8   authorized, sponsored, endorsed, or approved by Plaintiffs in any way.

9      76.   For many years, adidas and Reebok used the adidas Marks and Reebok

10   Marks, respectively, extensively and continuously before Defendants began

11   importing, sourcing, distributing, marketing, promoting, offering for sale, or selling

12   goods bearing confusingly similar and counterfeit imitations of Plaintiffs' Marks.

13      77.   The Counterfeit Goods are similar to, and compete with, apparel sold

14   by adidas and Reebok, and the parties' respective apparel is sold through

15   overlapping channels of trade.

16      78.   Defendants' use of confusingly similar and counterfeit imitations of

17   Plaintiffs' Marks is likely to deceive, confuse, and mislead purchasers and

18   prospective purchasers into believing that the apparel sold by Defendants is

19   manufactured by, authorized by, or in some manner associated with Plaintiffs, which

20   it is not. This risk is heightened by Defendants' blatant importation of counterfeit

21   replicas of adidas and Reebok apparel.

22      79.   The likelihood of confusion, mistake, and deception engendered by

23   Defendants' misappropriation of Plaintiffs' Marks is causing irreparable harm to the

24   goodwill symbolized by those marks, and the reputation for quality that they

25   embody. Among other things, Defendants' activities cause adidas and Reebok to

26   lose control of their brands, remove from adidas and Reebok the ability to control

27   the quality of products bearing the adidas Marks and Reebok Marks in the United

28   States, divert sales away from adidas and Reebok, and cause adidas and Reebok to

lose the ability to control the quantities of certain products made available for sale in the United States or within particular regions or markets within the United States.

80.     Defendants' activities are likely to cause confusion before, during, and after the time of purchase because purchasers, prospective purchasers, and others viewing the Counterfeit Goods at the point of sale or on a wearer are likely—due to Defendants' use of counterfeit and confusingly similar imitations of Plaintiffs' Marks—to mistakenly attribute the apparel to Plaintiffs.  This is particularly damaging with respect to those people who perceive a defect or lack of quality in Defendants' products.  By causing a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm on the goodwill symbolized by Plaintiffs' Marks and the reputation for quality that they embody.

81.     Plaintiffs sent Defendants a letter on January 8, 2019 in an attempt to resolve this matter without the need to resort to litigation. A true and correct copy of this letter is attached as **Exhibit 22**.

82.     On information and belief, Defendants continue to use counterfeit and confusingly similar imitations of Plaintiffs' Marks in connection with the sale of apparel that competes with the apparel manufactured and sold by Plaintiffs bearing Plaintiffs' Marks.

83.     On information and belief, since October 2018 and including in January and February of 2019 after Plaintiffs sent the letter, there have been a total of nine additional customs seizures totaling more than 54,000 pieces of counterfeit merchandise.

84.     On information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used counterfeit or substantially indistinguishable and/or confusingly similar imitations of Plaintiffs' Marks.

**H.     Defendants' Fabrication Of An Affidavit**

85.     On information and belief, Defendants submitted to law enforcement a sworn affidavit (the "Fabricated Affidavit") purportedly from an assistant managing

director from Style Textile Private Limited ("Style Textile"), a Pakistan-based manufacturer of adidas products. The Fabricated Affidavit purportedly states that adidas's licensing agreement with Style Textile authorized the sale of overruns and irregular quality goods in the local market in Pakistan. Through counsel, Defendants claim that they purchased the Counterfeit Goods in Pakistan and then imported them into the United States.

86.    The affidavit submitted by Defendants was false and, on information and belief, was willfully and knowingly fabricated. On information and belief, the affiant never worked for or represented Style Textile. On further information and belief, the letterhead used in the affidavit is not the letterhead used by Style Textile And contrary to Defendants' assertion, adidas's licensing agreement with Style Textile does not authorize the sale of overruns or irregular quality goods in the local market in Pakistan.

87.    Attached as **Exhibit 23** is the sworn affidavit of Naeem Siraj, who has been the General Manager Merchandising and Marketing at Style Textile since 2003. In his affidavit, to which the Fabricated Affidavit is attached as an exhibit, Mr. Siraj explains his "strong belief" that the Fabricated Affidavit "is fake," based on, *inter alia*, the facts that the Fabricated Affidavit (a) was printed on illegitimate letterhead, (b) includes the wrong telephone number, (c) includes the wrong legal name for Style Textile, (d) refers to an entity with which "Style Textile has never had any business dealings," and (d) was submitted by, and refers to, individuals who "have never been employed by Style Textile."

## FIRST CLAIM FOR RELIEF

### (Federal Counterfeiting)

88.    Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

89.    Defendants have knowingly manufactured, imported, distributed, marketed, promoted, offered for sale, or sold apparel bearing spurious marks that are

identical to and substantially indistinguishable from Plaintiffs' Marks.

90.    As a result of Defendants manufacturing, importing, distributing, marketing, promoting, offering for sale, or selling of the Counterfeit Goods, Defendants are using counterfeit marks, as that term is defined in Section 34(d)(1)(B) of the Lanham Act, and Defendants are accordingly liable under the anticounterfeiting provisions of the Lanham Act.

91.    Defendants' use of spurious marks identical to or substantially indistinguishable from Plaintiffs' Marks violates 15 U.S.C. § 1114, and Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to the goodwill and reputation of Plaintiffs as symbolized by their federally registered marks, for which Plaintiffs have no adequate remedy at law.

92.    Defendants are likely to continue causing substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief, an accounting of profits, damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117. Additionally, pursuant to 15 U.S.C. § 1117(b), Plaintiffs are entitled to trebling of the greater of profits or damages, and to prejudgment interest. Alternatively, pursuant to 15 U.S.C. § 1117(c), Plaintiffs are entitled to recover statutory damages for Defendants' willful use of counterfeit marks.

## SECOND CLAIM FOR RELIEF

### (Federal Trademark Infringement)

93.    Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

94.    Defendants' use of confusingly similar imitations of Plaintiffs' Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Counterfeit Goods are manufactured, produced, distributed, endorsed, sponsored, approved, or licensed by Plaintiffs, or are

1  associated or connected with Plaintiffs.

2      95.    Defendants have used marks confusingly similar to the federally

3  registered Plaintiffs' Marks in violation of 15 U.S.C. § 1114.  Defendants' activities

4  have caused and, unless enjoined by this Court, will continue to cause a likelihood

5  of confusion and deception of members of the trade and public, as well as injury to

6  the goodwill and reputation of Plaintiffs as symbolized by the registered Plaintiffs'

7  Marks, for which Plaintiffs have no adequate remedy at law.

8      96.    Defendants' actions demonstrate an intentional, willful, and malicious

9  intent to trade on the goodwill associated with the federally registered Plaintiffs'

10  Marks to the great and irreparable injury of Plaintiffs.

11      97.    Defendants have caused and is likely to continue causing substantial

12  injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief

13  and to recover Defendants' profits, actual damages, enhanced profits and damages,

14  costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

15              **THIRD CLAIM FOR RELIEF**

16              **(Federal Unfair Competition)**

17      98.    Plaintiffs repeat and incorporate by reference the allegations in the

18  preceding paragraphs.

19      99.    Defendants' use of confusingly similar imitations of Plaintiffs' Marks

20  has caused and is likely to cause confusion, deception, and mistake by creating the

21  false and misleading impression that the Counterfeit Goods are manufactured or

22  distributed by Plaintiffs, are affiliated, connected, or associated with Plaintiffs, or

23  have the sponsorship, endorsement, or approval of Plaintiffs.

24      100.   Defendants have made false representations, false descriptions, and

25  false designations of their goods in violation of 15 U.S.C. § 1125(a). Defendants'

26  activities have caused and, unless enjoined by this Court, will continue to cause a

27  likelihood of confusion and deception of members of the trade and public, and,

28  additionally, injury to the goodwill and reputation of Plaintiffs as symbolized by

- 34 -

Plaintiffs' Marks, for which Plaintiffs have no adequate remedy at law.

101.   Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks to the great and irreparable injury of Plaintiffs.

102.   Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## FOURTH CLAIM FOR RELIEF

### (Unfair and Deceptive Trade Practices)

103.   Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

104.   Defendants have been and are passing off the Counterfeit Goods as those of Plaintiffs, causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of the Counterfeit Goods; causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Plaintiffs; and otherwise damaging Plaintiffs and the consuming public.  Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of several states, including California CAL. BUS. & PROF. CODE § 17200, *et seq.* (West 2009); Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 2009); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (2009); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (2009); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (2009); Illinois, ILL. COMP. STAT. ANN. ch. 815, 510/1 to 510/7 (2009); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 2009); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 2009); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306 (2009); New Mexico, N.M. STAT. ANN. §§ 57-

1   12-1 to 57-12-22 (Michie 2009); New York, N.Y. GEN. BUS. Law § 349
2   (McKinney 2009); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04
3   (Baldwin 2009); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West
4   2009).

5        105.   Defendants' unauthorized use of confusingly similar imitations of
6   Plaintiffs' Marks has caused and is likely to cause substantial injury to the public
7   and to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover damages in
8   excess of $75,000 under each of the foregoing statutes. Furthermore, due to the
9   willful, wanton, malicious, and intentional nature of Defendants' actions—and to
10  the need to deter such future conduct—Plaintiffs are entitled to punitive damages
11  and to recover their costs and reasonable attorneys' fees.

12  **FIFTH CLAIM FOR RELIEF**
13  **(Common Law Trademark Infringement and Unfair Competition)**

14       106.   Plaintiffs repeat and incorporate by reference the allegations in the
15  preceding paragraphs.

16       107.   Defendants' acts constitute common law trademark infringement and
17  unfair competition, and have created and will continue to create, unless restrained by
18  this Court, a likelihood of confusion to the irreparable injury of Plaintiffs.  Plaintiffs
19  have no adequate remedy at law for this injury.

20       108.   On information and belief, Defendants acted with full knowledge of
21  Plaintiffs' use of, and statutory and common law rights to, Plaintiffs' Marks, without
22  regard to the likelihood of confusion of the public created by Defendants' activities.

23       109.   Defendants' actions demonstrate an intentional, willful, and malicious
24  intent to trade on the goodwill associated with Plaintiffs' Marks to the great and
25  irreparable injury of Plaintiffs.

26       110.   As a result of Defendants' acts, Plaintiffs have been damaged in an
27  amount not yet determined or ascertainable.  At a minimum, however, Plaintiffs are
28  entitled to injunctive relief, to an accounting of Defendants' profits, damages in

1    excess of $75,000, and costs.  Further, in light of the deliberately fraudulent and
2    malicious use of confusingly similar imitations of Plaintiffs' Marks, and the need to
3    deter Defendants from engaging in similar conduct in the future, Plaintiffs
4    additionally are entitled to punitive damages.

5                        **SIXTH CLAIM FOR RELIEF**
6                        **(Federal Trademark Dilution)**

7            111.   Plaintiffs repeat and incorporate by reference the allegations in the
8    preceding paragraphs.

9            112.   For decades, Plaintiffs have exclusively and continuously promoted and
10   used the registered Plaintiffs' Marks both in the United States and throughout the
11   world.  The marks therefore had become a famous and well-known symbol of
12   Plaintiffs and their products well before Defendants offered for sale the Counterfeit
13   Goods.

14           113.   Defendants are making use in commerce of marks that dilute and are
15   likely to dilute the distinctiveness of Plaintiffs' Marks by eroding the public's
16   exclusive identification of the famous Plaintiffs' Marks with Plaintiffs, tarnishing
17   and degrading the positive associations and prestigious connotations of Plaintiffs'
18   Marks, and otherwise lessening the capacity of Plaintiffs' Marks to identify and
19   distinguish the goods of Plaintiffs.

20           114.   Defendants' actions demonstrate an intentional, willful, and malicious
21   intent to trade on the goodwill associated with adidas's Three-Stripe Mark or to
22   cause dilution of the Three-Stripe Mark to the great and irreparable injury of adidas.

23           115.   Defendants have caused and will continue to cause irreparable injury to
24   adidas's goodwill and business reputation, and dilution of the distinctiveness and
25   value of adidas's famous Three-Stripe Mark in violation of 15 U.S.C. § 1125(c).
26   adidas therefore is entitled to injunctive relief and to Defendants' profits, actual
27   damages, enhanced profits and damages, and reasonable attorneys' fees under 15
28   U.S.C. §§ 1125(c), 1116 and 1117.

## PRAYER FOR RELIEF

WHEREFORE, adidas prays that:

1.      Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined preliminarily and permanently, from:

a.      manufacturing, sourcing, importing, distributing, marketing, advertising, promoting, offering for sale, or selling the Counterfeit Goods or any products bearing counterfeit or confusingly similar imitations of Plaintiffs' Marks;

b.      using Plaintiffs' Marks or any other copy, reproduction, colorable imitation or simulation of Plaintiffs' Marks on or in connection with the Counterfeit Goods;

c.      using any trademark, logo, design, or source designation of any kind on or in connection with the Counterfeit Goods that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Plaintiffs' Marks;

d.      using any trademark, logo, design, or source designation of any kind on or in connection with the Counterfeit Goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods are produced or provided by Plaintiffs, are sponsored or authorized by Plaintiffs, or are in any way connected or related to Plaintiffs;

e.      using any trademark, logo, design, or source designation of any kind on or in connection with the Counterfeit Goods that dilutes or is likely to dilute the distinctiveness of the trademarks or logos of Plaintiffs; and

f.      passing off, palming off, or assisting in passing off or palming off the Counterfeit Goods as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2.      Defendants be ordered to recall and retrieve all products bearing Plaintiffs' Marks or any other confusingly similar variation thereof, which have

1  been shipped by Defendants or under their authority, to any store or customer,

2  including, but not limited to, any retail store, marketer, distributor, or distribution

3  center, and also to deliver to each such store or customer a copy of this Court's

4  order as it relates to said injunctive relief against Defendants.

5         3.    Defendants be ordered to deliver up for impoundment and for

6  destruction all apparel, boxes, labels, tags, signs, packages, receptacles, advertising,

7  sample books, promotional material, stationery, or other materials in the possession,

8  custody, or under the control of Defendants that are found to adopt, use, feature,

9  infringe, or dilute any of Plaintiffs' Marks or that otherwise unfairly compete with

10 Plaintiffs or Plaintiffs' products;

11        4.    Defendants be compelled to account to Plaintiffs for any and all profits

12 derived by Defendants from the sale or distribution of the Counterfeit Goods and

13 any other products featuring, bearing, or having been sold under or in connection

14 with counterfeit or confusingly similar imitations of Plaintiffs' Marks;

15        5.    Plaintiffs be awarded all damages caused by the acts forming the basis

16 of this Complaint;

17        6.    Based on Defendants' knowing and intentional use of counterfeit and

18 confusingly similar imitations of Plaintiffs' Marks, the damages award be trebled

19 and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. §

20 1117(a) and (b);

21        7.    Defendants be required to pay to Plaintiffs the costs and reasonable

22 attorneys' fees incurred by Plaintiffs in this action pursuant to 15 U.S.C. § 1117(a)

23 and the state statutes cited in this Complaint;

24        8.    Based on Defendants' willful and deliberate infringement and/or

25 dilution of Plaintiffs' Marks, and to deter such conduct in the future, Plaintiffs be

26 awarded punitive damages;

27        9.    Defendants be required to pay prejudgment and post-judgment interest

28 on the damages and profits awards; and

1    10.    Plaintiffs have such other and further relief as the Court may deem just.

2                          **JURY TRIAL DEMAND**

3        Plaintiffs respectfully demand a trial by jury on all claims and issues so

4    triable.

5    DATED:  June 13, 2019           Respectfully submitted,

6                                    KILPATRICK TOWNSEND & STOCKTON
                                     LLP
7

8                                    By:    /s/ Trevor C. Maxim
9

10                                   Trevor C. Maxim
                                     Attorneys for Plaintiffs
11                                   adidas America, Inc., adidas AG, Reebok
                                     International Limited, and Reebok
12                                   International Ltd.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28